UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

MARTIN BAEZ,

                        Plaintiff,

             -against-

NEW YORK CITY DEPARTMENT OF
TRANSPORTATION, METROPOLITAN
TRANSPORTATION AUTHORITY, AND
NEW YORK CITY TRANSIT
AUTHORITY,

                       Defendants.

------------------------------------------------------------

14 Civ. 02520 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Martin Baez brings this case against Defendants New York City Department of Transportation ("DOT"), Metropolitan Transportation Authority ("MTA"), and New York City Transit Authority ("NYCT") alleging the conversion of the M60 bus line to an express route violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., 42 U.S.C. § 1983, and the Equal Protection Clause of the United States Constitution. Defendants have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons below, Defendants' motions are granted.

### I. BACKGROUND

      The following facts are based on Plaintiff's Complaint, uncontested documents attached to or incorporated by reference in the Complaint, undisputed facts in Defendants' Answers, and documents of which the Court takes judicial notice. Plaintiff commenced this action pro se and is now represented by counsel.

      Plaintiff Martin Baez is a "disabled Black Dominican, wheelchair user, who lives in Community Board 10 who has a need and desire to use the M60 Bus to the airport."

Community Board 10 covers central Harlem, and its boundaries along 125th Street are Saint Nicholas Avenue on the west and Fifth Avenue on the east.

Plaintiff, initially proceeding pro se, commenced this action on behalf of himself and a putative class of senior and/or disabled bus riders against Defendants DOT, MTA, and NYCT by Complaint dated April 8, 2014.  The Complaint sought injunctive and declaratory relief barring Defendants from converting the M60 bus line to an express M60 Select Bus Service ("M60 SBS"), which went into effect on or around May 25, 2014.[1]  The Complaint asserts that this conversion discriminated against Plaintiff and bus riders who are Black, Latino, elderly and/or disabled by eliminating several bus stops and creating offset traffic lanes.

In Community District 10, the conversion to the M60 SBS eliminated the following stops:  (1) 125th Street and Frederick Douglass Boulevard; (2) 125th Street and Adam Clayton Powell Boulevard; and (3) 125th Street and Fifth Avenue.  Consequently, the M60 SBS would make two stops, rather than five stops, in Community District 10:  (1) 125th Street and Saint Nicholas Avenue; and (2) 125th Street and Lenox Avenue.

The conversion to the M60 SBS also involved creating offset lanes dedicated to buses and right turns along 125th Street.  The offset lanes are one lane away from the curb, and the lane next to the curb is used for parking and bus stops.  The conversion also includes: (1) lengthening bus stops to make it easier for buses to get to the curb; (2) using off-board fare payment; and (3) updating parking regulations.  Defendants assert that these changes were made

---

[1] By Order dated April 28, 2014, Plaintiff's request that this matter proceed as a class action was denied because a pro se litigant may not proceed on behalf of anyone other than himself and his request for a temporary restraining order and preliminary injunction was denied because he failed to establish irreparable harm.

to ease congestion on 125th Street and reduce travel time on the M60, which was one of the busiest bus routes on 125th Street.

## II.     LEGAL STANDARD

The Court reviews motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as Rule 12(b)(6) motions to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). The Court accepts as true all of the nonmoving party's well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). Judgment on the pleadings may be granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

On a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them, . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . . any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). Judicial notice may be taken of material that is a matter of public record. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *accord Oneida Indian Nation v. New York*,

3

691 F.2d 1070, 1086 (2d Cir. 1982) (holding that judicial notice of "law, legislative facts, or factual matters that are incontrovertible" are admissible).

### III. DISCUSSION

#### A. The ADA Claims

The Complaint fails to state a claim for discrimination under the ADA. Title II of the ADA covers discrimination in the provision of public services and is "divided into Parts A and B: Part A governs public services generally, and Part B governs the provision of public transportation services." *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks and citation omitted). To state a claim under Title II of the ADA, Plaintiff must establish that: (1) he is a qualified individual with a disability; (2) the Defendants are subject to the ADA; and (3) Plaintiff was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants, by reason of his disability. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196-97 (2d Cir. 2014). "[T]he phrase 'services, programs, or activities' has been interpreted to be a 'catch-all phrase that prohibits all discrimination by a public entity.'" *Noel*, 687 F.3d at 68 (quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997)).

The Complaint alleges that the elimination of several bus stops along 125th Street and the creation of offset bus lanes in the conversion to the M60 SBS violates both subparts of Title II by subjecting Plaintiff, as a disabled person, to "major inconvenience." This argument is legally incorrect for at least three reasons.

First, the elimination of several bus stops along the new M60 SBS route means Plaintiff must travel approximately an additional 500 to 1350 feet to the next nearest stop on that route. This inconvenience "is not tantamount to stating a claim of exclusion or discrimination." *Hassan v. Slater*, 41 F. Supp. 2d 343, 350 (E.D.N.Y. 1999), *aff'd*, 199 F.3d 1322 (2d Cir. 1999). The ADA and its implementing regulations do not require equal access or equal results for individuals with disabilities; rather, those individuals must be provided with "meaningful access" to a public entity's programs or activities. *See Henrietta v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003) (stating the standard is "whether the plaintiffs with disabilities could achieve meaningful access, and not whether the access the plaintiffs had (absent a remedy) was *less* meaningful than what was enjoyed by others"). Accordingly, the elimination of these stops along the M60 SBS route does not amount to denial of access or discrimination.

Second, the materials attached to the Complaint show that, by using other bus routes, the distance Plaintiff must travel to a bus stop on 125th Street remains the same. Along 125th Street, the Bx15, M100, and M101 buses all make stops at (1) the M60 SBS stops and (2) stops between the M60 SBS stops. The Court also takes judicial notice of the fact that the Bx15, M100, and M101 bus routes make the same stops that the local M60 route used to make along the portion of 125th Street in Community District 10, namely: (1) 125th Street and Frederick Douglass Boulevard; (2) 125th Street and Adam Clayton Powell Boulevard; and (3) 125th Street and Fifth Avenue. In evaluating whether a particular program complies with the ADA, the program must be "viewed in its entirety" to determine if the "service, program, or activity" administered by a public entity shall be "readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). When the public bus system is viewed in its entirety, the

elimination of the local stops from the M60 SBS route does not impact the distance Plaintiff must travel to ride a bus on 125th Street in Community District 10.   Because he can avoid having to travel farther by taking a local bus, the harm to Plaintiff as a result of the change in bus service is at most the inconvenience of having to change from one of the local buses to the M60 SBS in order to travel to the airport.   This inconvenience is not a denial of access nor is it discriminatory.   *Cf. McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice.").

Third, the creation of offset bus lanes along portions of 125th Street does not amount to a denial of the opportunity to participate in or benefit from the public bus system.   Construed in the light most favorable to Plaintiff, the Complaint alleges that offset bus lanes make access to the bus more "inconvenien[t]" for Plaintiff, but does not explain how.   The materials Plaintiff submitted with the Complaint show that the offset bus lanes are traffic lanes that are one lane away from the curb and are dedicated to buses and cars making right turns.   According to these materials, the bus stops remain at the curb.   Plaintiff has not shown how the offset bus lane amounts to exclusion or discrimination, or how it has any negative impact on any bus passenger.   *See Hassan*, 41 F. Supp. 2d at 350.

For these reasons, the Complaint fails to state a claim under the ADA.

### B.  The 42 U.S.C. § 1983 and Equal Protection Claims

The Complaint fails to state a claim under 42 U.S.C. § 1983 and the Equal Protection Clause.   In order to establish a claim pursuant to § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that

right acted under color" of state law.  *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir. 2005) (internal quotation marks omitted).  Analysis of a § 1983 claim begins by identifying the particular rights of which plaintiff alleges he was deprived.  *See Baker v. McCollan,* 443 U.S. 137, 140 (1979); *Graham v. Connor,* 490 U.S. 386, 394 (1989) ("The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right[.]").  The gravamen of the Complaint's discrimination claim is that the elimination of bus stops and creation of dedicated bus lanes, which primarily impacts residents of Community District 10, amounts to discrimination on the basis of race, age, and disability under the Fourteenth Amendment's Equal Protection Clause.[2]

This Circuit "has generally recognized three types of equal protection violations:  (1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect . . .; and (3) a facially neutral law that is enforced in a discriminatory manner."  *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 199 (2d Cir. 2014).  The Complaint does not allege that the policy at issue -- the conversion to the M60 SBS -- was facially discriminatory.  Accordingly, the Complaint must plead facts sufficient to establish either the second or third category of equal protection violations.  The Complaint does not do so.

---

2   Although the Complaint is not clear about whether it brings a disability discrimination claim under the Equal Protection Clause, this Opinion assumes that such a claim is included. Disability discrimination could amount to an equal protection claim but is not subject to heightened scrutiny.  *See Bd. of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 365-66 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational.").

First, the Complaint has not -- and cannot -- plead that conversion to the M60 SBS was applied with a "discriminatory effect" or "enforced in a discriminatory manner." As discussed above, the elimination of bus stops from the M60 SBS route does not limit access to the M60 SBS because (1) other bus routes continue to make stops at both the eliminated routes and the current M60 SBS routes and (2) passengers are required to travel no more than 1350 feet to the next nearest stop on the new M60 SBS route. Moreover, the creation of offset bus lanes seems to have no impact on bus passengers, as discussed above, and to the extent it does, impacts all bus passengers traveling on 125th Street equally regardless of their race, age or disability.

Second, the Complaint fails to plead that the Defendants acted with discriminatory purpose as required. The Complaint must plead sufficient factual matters to show that the Defendants adopted and implemented the challenged policy "at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Hayden v. Paterson*, 594 F.3d 150, 161-62 (2d Cir. 2010) (citation and internal quotation marks omitted). Here, Plaintiff asserts, "[u]pon information and belief, defendants acknowledged that their plan would discriminate against the disabled, senior and ethnic communities" but that because, "such discrimination wasn't in large scale[,] they have determined that the plan would still go forward." Even if this allegation is assumed to be true, it does not amount to a discriminatory purpose because it evidences only an "awareness of consequences" and does not show that racial, age or disability discrimination was a motivating factor in the adoption of the M60 SBS changes. *Id.* at 163 (citation and internal quotation marks omitted). The Complaint therefore fails to allege a discriminatory intent in the conversion to the M60 SBS.

For these reasons, the Complaint's § 1983 and equal protection claims fail.

### C. Plaintiff's Remaining Argument

Plaintiff's opposition to Defendants' motion for judgment on the pleading asks the Court to stay its decision on these motions until discovery is conducted.   This argument is unpersuasive.   Plaintiff's opposition cites the summary judgment standard in support of this request, which is inapposite.   Testing the sufficiency of the Complaint does not require discovery because the factual assertions in the Complaint are assumed to be true for purposes of these motions.

To the extent Plaintiff seeks leave to amend his Complaint, leave is denied as futile.   The lack of discriminatory impact and intent dooms Plaintiffs' ADA and equal protection claims.  Because any "proposed amendments would fail to cure prior deficiencies or to state a claim," leave to amend is denied as futile.   *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motions are GRANTED.   The Clerk of Court is respectfully directed to amend the caption as reflected on the first page of this Opinion, close all outstanding motions, and terminate the case.

SO ORDERED.

Dated: June 15, 2015
       New York, New York

                                    _____
                                    **LORNA G. SCHOFIELD**
                                    **UNITED STATES DISTRICT JUDGE**